UNITED STATES, Appellee,

v.

**Sergeant Michael J. YOUNG, United States Army, Appellant.**

**ARMY 9501601.**

U.S. Army Court of Criminal Appeals.

29 May 1997.

For Appellant: Captain Dirk Gifford, JA (argued); Captain John M. Head, JA; Captain Eric S. Krauss, JA (on brief).

For Appellee: Captain Joanne P. Tetreault, JA (argued); Colonel John M. Smith, JA; Lieutenant Colonel Eva M. Novak, JA (on brief).

Before TOOMEY, RUSSELL, and CARTER, Appellate Military Judges.

OPINION OF THE COURT

RUSSELL, Judge:

A general court-martial composed of officer and enlisted members convicted the appellant, contrary to his pleas, of conspiracy and robbery in violation of Articles 81 and 122, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 922 (1988) [hereinafter UCMJ]. The approved sentence is a bad-conduct discharge, forfeiture of $569.00 pay per month for eighteen months, and reduction to Private E1.

This case is before the court for automatic review pursuant to Article 66, UCMJ. We have considered the record of trial, the assignment of error, the government's answer thereto, those errors raised personally by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and oral argument. The assigned error asserts that the military judge erred by failing to suppress statements made to criminal investigators after he invoked his right to counsel. We disagree and affirm.

FACTS

On 22 May 1995, Special Agent (SA) Sanders, an Army criminal investigator, apprehended the appellant as a suspect in a robbery. After placing the appellant in custody, SA Sanders transported him to an office at the military police station for questioning. Prior to the interrogation, the appellant was advised that he was suspected of robbery and was read his rights pursuant to Article 31, UCMJ. Appellant stated that he understood

his rights and was willing to discuss the offense without speaking to an attorney first or having an attorney present during questioning.

Special Agent Sanders questioned the appellant about his involvement in the robbery. Initially, the appellant denied any involvement. Special Agent Sanders continued to question the appellant, occasionally taking breaks to check appellant's answers against the story of another suspect, Private (PVT) Pistorino, who was being interrogated by another investigator in a nearby room. Eventually, PVT Pistorino confessed that he and appellant had committed the robbery. Upon learning of PVT Pistorino's admissions, SA Sanders informed the appellant that he knew what had happened, that the appellant had received $600.00 for the victim's stolen watch, and that all he needed to know from the appellant was where the appellant had pawned the watch. The appellant looked at SA Sanders and then replied, "I guess I want a lawyer." To eliminate any ambiguity, SA Sanders asked appellant, "You want a lawyer?" The appellant replied unequivocally that he wanted a lawyer.

Special Agent Sanders then terminated the interview and got up to leave the interview room. When he reached the door, however, SA Sanders turned around and directed a comment to the appellant as follows: *"I want you to remember me, and I want you to remember my face, and I want you to remember that I gave you a chance."* As SA Sanders turned to continue out the door, the appellant told him to stop and that there was something he wanted to say. Special Agent Sanders reminded appellant that he had just requested a lawyer, to which the appellant responded that he no longer wanted a lawyer. Special Agent Sanders persisted in asking whether the appellant really did *not* want a lawyer present. The appellant ultimately exclaimed, "No, I don't want a fucking lawyer!" Special Agent Sanders then resumed the interrogation, which soon resulted in the appellant's sworn confession.

The military judge concluded from the foregoing evidence that, when SA Sanders made his comment, he honestly believed that the appellant's invocation of his right to counsel had thwarted his effort to persuade the appellant to make a confession; he was feeling frustrated "at having gotten nowhere with an uncooperative suspect" and fully intended "to continue out the door" without reinitiating interrogation. The military judge specifically found as fact that SA Sanders' comment was a "parting shot" that: (1) was not made with the subjective intent of continuing the interrogation; and (2) was a declaratory statement from which no response was invited or expected by SA Sanders.

As a matter of law, the military judge reasoned that no *Edwards*[1] violation occurred, because a reasonable police officer would not have anticipated that the "remember my face" comment was likely to elicit a retraction of the invocation of the right to counsel or an incriminating response.

## LAW

Inasmuch as the military judge's findings of fact are fully supported by the record, they are adopted by this court. However, we must decide de novo the legal question of whether a reasonable police officer would have anticipated that SA Sanders' "remember my face" comment was likely to elicit a retraction of the invocation of the right to counsel or an incriminating response. *See, e.g., United States v. Wean,* 45 M.J. 461 (1997)(standard of review for mixed questions of law and fact).

A clear and unambiguous attempt by a police investigator to talk a suspect out of his decision to request counsel violates the rule of *Edwards v. Arizona. See Collazo v. Estelle,* 940 F.2d 411 (9th Cir.1991), *cert. denied,* 502 U.S. 1031, 112 S.Ct. 870, 116 L.Ed.2d 776 (1992). However, not every police initiated comment implicitly critical of a request for a lawyer constitutes an *Edwards* violation. Each comment must be evaluated objectively for constitutional infirmity: Is the statement one that a police officer would, under the circumstances, believe to be reasonably likely to convince the suspect to change his mind about wanting to consult

1. *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct.   1880, 68 L.Ed.2d 378 (1981)

with a lawyer. *See Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). Any police comment deliberately calculated to elicit such a retraction will almost certainly fail this objective test.[2] *See Innis,* 446 U.S. at 301–02, n. 7, 100 S.Ct. at 1690, n. 7. Thus, it is significant (but not dispositive) in applying the *Innis* test to the case at bar that we have found as fact that SA Sanders did not expect or intend for his comment to elicit a retraction of the appellant's request for counsel.

## DISCUSSION

 Special Agent Sanders' somewhat ambiguous comment, considered in a light most favorable to the appellant, may be taken as chastisement of the decision to request counsel. However, the comment was made after SA Sanders had stopped questioning the appellant concerning the offenses and was exiting the room. The appellant had just firmly and unequivocally demanded counsel and, up to that point, had steadfastly maintained his innocence in the face of the coercive influence of custodial interrogation. Though the appellant had not yet been formally excused from the interrogation room, it was obvious that SA Sanders had terminated his interrogation and was leaving the scene, frustrated. Therefore, whatever minimal impact SA Sanders' comment had on the appellant took

effect after the pressure of the custodial interrogation had been substantially reduced.

Applying the *Innis* test to these facts, we are satisfied that a reasonable police officer would *not* have anticipated that SA Sanders' "remember my face" comment was likely to elicit a retraction of the appellant's request for counsel. A persistently recalcitrant suspect is not reasonably likely to suddenly agree to cooperate because of a terse comment blurted out in frustration by an investigator who was leaving the room after terminating questioning. Accordingly, we find that SA Sanders' comment did not constitute a reinitiation of interrogation prohibited by the rule of *Edwards v. Arizona,* made applicable to the military by *United States v. Harris,* 19 M.J. 331 (C.M.A.1985), *rev'd on other grounds,* 21 M.J. 173 (C.M.A.1985).

Appellant's remaining assertions of error are without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge TOOMEY and Judge CARTER concur.

---

**2.** We are mindful that a cunning police investigator could deliberately violate the *Edwards* rule by staging an intemperate fit to shake the resolve of a suspect who invokes his right to counsel during custodial interrogation. We believe that the intentional use of such conduct as an "investigative technique" constitutes police misconduct. However, we have great confidence in the military judges who administer the court-martial factfinding process to identify and rectify such intentional police misconduct.